CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JUL 23 2010

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| AARON A. STEVENSON, | ) |
| | ) Civil Action No. 7:09-CV-00525 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) By: Hon. Glen E. Conrad |
| JAMIE A. KWIECINSKI, et al., | ) Chief United States District Judge |
| | ) |
| Defendants. | ) |

The plaintiff, Aaron Stevenson, brought this civil action against defendants Jamie Kwiecinski, Dwight Ayers, Atlas Gaskins in his official capacity, and the City of Roanoke. This matter is currently before the court on cross-motions for summary judgment. For the reasons stated below, the court will grant the defendants' motion for summary judgment and deny the plaintiff's motion for summary judgment.

## Background

On May 6, 2009, Officer Kwiecinski initiated a traffic stop of plaintiff's vehicle for an expired license tag. Officer Kwiecinski obtained the plaintiff's driver information and, while preparing a summons for the traffic infraction in his police vehicle, learned that the plaintiff possessed a concealed handgun permit. Officer Kwiecinski returned to the plaintiff's vehicle to present the summons and obtain the plaintiff's signature. As he was presenting the summons, he asked the plaintiff if he had a firearm in the vehicle. Plaintiff refused to answer. The officer then informed the plaintiff that, as a concealed carry permit holder, the plaintiff was required to inform him whether he had a firearm in the vehicle. The plaintiff again declined to answer.

Officer Kwiecinski then requested back-up assistance from another officer. Officer Ayers arrived on the scene and was briefed by Officer Kwiecinski of the situation. Officer Ayers then approached the plaintiff and asked him if he was carrying a firearm. Plaintiff again refused to answer.

The officers maintain that, at the time of the incident, they believed it was a violation of Virginia law for a concealed handgun permit holder to refuse to inform a police officer whether or not he was in possession of a handgun. The officers asked the plaintiff to exit his vehicle, whereupon they found a .45 caliber handgun in a holster on the plaintiff's hip and a folding pocket knife, which they temporarily seized. Once the plaintiff was outside the vehicle, the officers conducted a protective search of the passenger compartment of the plaintiff's vehicle and placed the plaintiff in handcuffs. During this time, the officers' supervisor, Sergeant S.D. Duffey, also arrived on the scene.

While the plaintiff was handcuffed, the officers ran the serial number of the handgun and verified plaintiff's concealed handgun permit. Officer Ayers then telephoned a magistrate to determine the precise charge for the plaintiff's refusal to respond when asked by the officers whether he possessed a firearm. Officer Ayers spoke with the magistrate several times trying to decide what charge should be cited. The magistrate, however, was unable to provide the officers with the exact charge for the crime which they asserted had been committed. In point of fact, the Commonwealth of Virginia has no such statutory requirement, and it is now undisputed that the officers were incorrect in thinking otherwise. The officers then released the plaintiff from detention and returned his .45 caliber handgun and pocket knife. The officers asked the plaintiff not to re-load his gun until after the officers had left the scene. It is undisputed that the plaintiff had been detained for

2

approximately 56 minutes from the time that Officer Kwiecinski informed the plaintiff that he was being detained.

Based on these events, the plaintiff asserts that the officers violated his rights under the Second and Fourth Amendments to the United States Constitution and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. The plaintiff also contends that the officers violated 42 U.S.C. §§ 1985 and 1986 and committed false arrest and battery under state law. The plaintiff asserts that defendants Gaskins, in his capacity as Chief of the Roanoke City Police Department, and the City of Roanoke are liable due to a failure to train the officers and for maintaining a policy or custom of subjecting concealed handgun permit holders to compulsory interrogation.

Both parties have now filed motions for summary judgment. The motions were fully briefed and the parties have appeared before the court for a hearing on these motions. At the court's request, the parties also submitted supplemental briefs after the hearing. The matter is now ripe for disposition.

## Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, an award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most

favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

The plaintiff asserts claims against the City of Roanoke and Chief Gaskins in his official capacity, citing failure to train and an actionable municipal policy or custom. Under § 1983, "a municipality can be liable only when the municipality itself, through one of its policies or customs, causes the constitutional violation; municipal liability cannot be premised on *respondeat superior* or vicarious liability." Buffington v. Baltimore County, 913 F.2d 113, 122 (4th Cir. 1990) (citing Monell v. N.Y.C. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). Moreover, the municipal policy or custom must be the direct cause of the constitutional violation. Id. A failure to train is a basis for liability only if such failure "amounted to deliberate indifference to the rights of persons with whom the police come into contact." Collins v. City of Harker Heights, 503 U.S. 115, 123-24 (1992) (internal quotations omitted). The plaintiff in this case has identified no evidence which suggests that his detention was the result of a policy or custom, and no evidence of a pattern of police conduct with regard to concealed handgun permit holders. Nor has the plaintiff forecast evidence that any failure to train was the result of deliberate indifference on the part of the defendants. Rather, the plaintiff advances his claim on the basis of the one incident at issue in this case. Because the plaintiff has not raised a genuine issue of material fact, his claims against Chief Gaskins and the City of Roanoke will be dismissed.

The plaintiff's claims under the Second Amendment, § 1985, and § 1986 are equally unavailing. In his complaint, the plaintiff asserts that the defendants violated his right to bear arms when the defendants asked the plaintiff to refrain from loading his handgun until the police officers

had left the parking lot. Although the United States Supreme Court has held that the Second Amendment to the United States Constitution protects an individual's right to keep and bear arms for the purpose of self-defense, the plaintiff makes no argument and adduces no evidence to show how the officers' request in this case violated this right. With respect to the plaintiff's claims of civil conspiracy under 42 U.S.C. § 1985 and neglect to prevent such conspiracy in violation of 42 U.S.C. § 1986, the plaintiff again fails to forecast any evidence to support such violations. Because the plaintiff has failed to raise a genuine issue of material fact with respect to these claims, the court will grant the defendants' motion for summary judgment.

The more difficult issue in this case revolves around the officers' contention that they are entitled to qualified immunity for their detention of the plaintiff. Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to protect government officials "from undue interference with their duties and from potentially disabling threats of liability." Id. at 806. It provides protection to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In determining whether a defendant is entitled to qualified immunity, the court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all," and "whether that right was clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999). The United States Supreme Court has held that lower courts are not required to take this two-step inquiry in any particular order; rather, a flexible approach is appropriate. See Pearson v. Callahan, 555 U.S. ___, ___, 129 S. Ct. 808, 818 (2009).

In assessing whether the constitutional right at issue was clearly established, the court must determine whether "it would be clear to an objectively reasonable officer that his conduct violated that right." Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003). In other words, the qualified immunity analysis examines the objective reasonableness of an officer's conduct. Smith v. Reddy, 101 F.3d 351, 355 (4th Cir. 1996).

In this case, the defendants' initial stop of the plaintiff's vehicle for an expired license tag is not challenged. Rather, the plaintiff challenges his subsequent detention based on the officers' mistaken belief that a refusal to inform a police officer that he was carrying a firearm was a violation of Virginia law. The Virginia Code states that a person issued a concealed handgun permit "shall have such permit on his person at all times during which he is carrying a concealed handgun and shall display the permit and a photo-identification issued by a government agency of the Commonwealth or by the United States Department of Defense or United States State Department (passport) upon demand by a law-enforcement officer." Va. Code § 18.2-308(H). The Code does not require a permit holder to inform an officer that he is presently in possession of a handgun.

Assuming that a constitutional right has been implicated by the defendants' detention of plaintiff, the court nevertheless concludes that the officers are entitled to qualified immunity. There is no evidence in the record, direct or circumstantial, which disputes the officers' assertion that, on the evening in question, they believed that a concealed handgun permit holder was required by law to advise officers as to whether he was in possession of a handgun. There is no indication that the officers had an ulterior motive or that they detained the plaintiff for any reason other than to ascertain whether a state offense had been committed. The officers conferred with their supervisor and contacted a magistrate to verify the precise charge. The video of the incident reveals that the officers

acted in a courteous fashion. When the officers were unable to obtain the precise charge within a reasonable time, they released the plaintiff. In short, the record suggests that the officers acted in a good faith but mistaken belief that the law required the plaintiff to inform them that he was in possession of a handgun.

In passing, the court notes that the officers' belief in this case was not outside the realm of reason. Although Virginia law does not require a permit holder to inform an officer that he is carrying a firearm, it does require a permit holder to display his permit upon demand by an officer. Va. Code § 18.2-308(H). In addition, other states require concealed carry permit holders to inform police officers that they are in possession of a handgun. For example, North Carolina requires permit holders to "disclose to any law enforcement officer that the person holds a valid permit and is carrying a concealed handgun when approached or addressed by the officer." N.C. Stat. § 14.415.11; see also La. Rev. Stat. § 40:1379.3 (permittees "shall notify any police officer who approaches the permittee in an official manner or with an identified official purpose that he has a weapon on his person.").

Turning to the officer's decision to detain the plaintiff in this case, the court is unable to find any evidence to suggest that this decision was unreasonable. The officers detained the plaintiff only for as long as was necessary to determine the nature of the charge from a magistrate. When they were unable to do so within a reasonable time, the plaintiff was released.

Whether an official is entitled to the qualified immunity defense turns on the objective reasonableness of the official's actions. The officers' mistake in this case does not, in and of itself, vitiate that defense. After all, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed

7

questions of law and fact." Pearson, 555 U.S. at ___, 129 S. Ct. at 815 (internal quotations and citations omitted). Although there may be reasons to treat an officer's mistake of law differently from a mistake of fact in other contexts, the court is not persuaded that a mistake of law should be treated differently in the context of qualified immunity. Stated differently, a mistake of law does not foreclose the defense of qualified immunity. See Butz v. Economou, 438 U.S. 478, 507 (1978) ("Federal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law."); see also Amore v. Novarro, No. 08-3150, 2010 U.S. App. LEXIS 12736, at *27 (2nd Cir. June 22, 2010) (holding officer's arrest of plaintiff not objectively unreasonable where he believed that statute of arrest was valid and in effect); Benson v. Hightower, 633 F.2d 869, 871 (9th Cir. 1980) (holding that a good faith mistake of law should be treated no differently than a mistake of fact); Baisch v. Van Buren, No. 09-10266, 2010 U.S. Dist. LEXIS 42406, at *9 (E.D. Mich. April 30, 2010) (holding officer's detention of plaintiffs based on mistake of law reasonable).

This holding compliments the recognition that:

> ...in holding our law enforcement personnel to an objective standard of behavior, our judgment must be tempered with reason. If we are to measure official action against an objective standard, it must be a standard which speaks to what a reasonable officer should or should not know about the law he is enforcing and the methodology of effecting its enforcement. Certainly we cannot expect police officers to carry surveying equipment and a Decennial Digest on patrol...

Tarantino v. Baker, 825 F.2d 772, 774-75 (4th Cir. 1987) (citation omitted). In this case, there appears to be no reason to believe that the officers were not sincere in their belief that a Virginia statute had been violated, or that the officers' relatively short detention of plaintiff was motivated by any objective other than the futile effort to identify the nonexistent statutory provision. Inasmuch

as the officers' mistake was not unreasonable, the court is constrained to conclude as a matter of law that the defendants are entitled to qualified immunity.

In so holding, the court does not trivialize the disruption caused to the plaintiff in this case. The court regrets that he was detained for actions which were not contrary to Virginia law. Nevertheless, "not every unfortunate incident gives rise to § 1983 liability against a municipality or its officials. The police must be held to standards of reasonableness, not to standards of perfection." Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991). Under the circumstances of this case, the officers acted with objective reasonableness and are therefore entitled to qualified immunity from the plaintiff's § 1983 claims.

Finally, as the court herein grants the defendants' motion for summary judgment with respect to all of the plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over any remaining state law claims, pursuant to 28 U.S.C. § 1367(c).

## Conclusion

For the foregoing reasons, the court will grant the defendants' motion for summary judgment and deny the plaintiff's motion for summary judgment.

The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 23rd day of July, 2010.

_____
Chief United States District Judge